IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **FRANCISCO FERNANDO-MATEO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 20-cv-2999** |
| | ) | |
| **BILL PRIM, McHenry County Sheriff;** | ) | **Judge John Z. Lee** |
| **ROBERT GUADIAN, Field Office** | ) | |
| **Director, Chicago, U.S. Immigration** | ) | |
| **and Customs Enforcement; and** | ) | |
| **CHAD F. WOLF, Secretary (Acting),** | ) | |
| **U.S. Department of Homeland Security,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM OPINION AND ORDER

Francisco Fernando-Mateo has filed a petition for habeas corpus under 28 U.S.C. § 2241, as well as an emergency motion for a rule to show cause why his petition should not be granted. Fernando-Mateo is an alien from Guatemala who is subject to a reinstated order of removal under 8 U.S.C. § 1231(a)(5). Prior to being removed, he informed the authorities that he is fearful for his life if he is returned to Guatemala. This triggered withholding of removal proceedings under 8 U.S.C. § 1231(b)(3)(A) to determine whether Fernando-Mateo should be returned to Guatemala or another country. In the meantime, he has been detained without a bond hearing, to which he argues that he is entitled under 8 U.S.C. § 1226(a).

Respondents McHenry County Sheriff Bill Prim, the Field Office Director of the U.S. Immigration and Customs Enforcement in Chicago Robert Guadian, and the Acting Secretary of the U.S. Department of Homeland Security Chad Wolf

(collectively "Respondents")[1] contend that an alien, like Fernando-Mateo, who is detained subject to a section 1231(a)(5) reinstated removal order does not have the right to a bond hearing.

For the reasons explained below, Fernando-Mateo's petition and motion are granted. Respondent Guadian is directed to provide Fernando-Mateo with an individualized bond hearing no later than three days from the issuance of this Order and to release him on bond if he is eligible.

## I.  Background

Fernando-Mateo first entered the United States without authorization on November 12, 2014, and was discovered and removed that same day by the United States Department of Homeland Security ("DHS") pursuant to an expedited removal order. He was returned to Guatemala, the country whence he came. Gov't's Ex., Ochoa Decl. ¶ 7, ECF No. 11-1.

Fernando-Mateo again entered the United States without authorization in 2015 and again was discovered by DHS. At that point, DHS reinstated the removal order from November 2014 pursuant to 8 U.S.C. § 1231(a)(5) and returned Fernando-Mateo to Guatemala.[2]

---

[1]     Fernando-Mateo has sued Guadian as the official who is legally authorized to provide an individualized bond hearing, and Wolf as the official who implemented the policy that confined him without a bond hearing. *See* 8 C.F.R. § 236.1(d)(1); 8 U.S.C. § 1103(a)(3); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 n.8 (2004); *Romero v. Evans*, 280 F. Supp. 3d 835, 842–43 (E.D. Va. 2017), *aff'd sub. nom. Guzman Chavez v. Hott*, 940 F.3d 867, 878 (4th Cir. 2019), *cert. granted sub nom. Albence v. Guzman Chavez*, No. 19-897, 2020 WL 3146678 (U.S. June 15, 2020). He has sued Prim as his custodian in the event that the bond hearing permits his release. *See Romero*, 280 F. Supp. 3d at 842–43.

[2]     Section 1231(a)(5) states:

Similar events unfolded in 2016. Fernando-Mateo entered the United States without authorization; he was discovered; DHS reinstated the 2014 removal order; and he was removed to Guatemala. *Id.* ¶¶ 8–9.

Undeterred, Fernando-Mateo again entered the United States without authorization on May 20, 2019. Pet. Writ Habeas Corpus & Req. Release Detention ("Pet.") ¶ 5, ECF No. 1. And, like before, he was discovered by DHS. Ochoa Decl. ¶ 10.

On May 22, 2019, DHS notified him of its intent to reinstate the 2014 removal order. *Id.* Fernando-Mateo acknowledged receipt of the notice and indicated that he did not contest the reinstatement. *Id.* He also confirmed that Francisco Fernando-Mateo was his true name and admitted that he had used aliases when he had entered the United States in the past. *Id.* Then, on May 24, 2019, DHS released him on an order of supervision pending removal. *Id.*

During the subsequent six months, Fernando-Mateo checked in routinely with DHS. Pet. ¶ 16. On one such occasion, on November 21, 2019, DHS again notified Fernando-Mateo of its decision to reinstate the 2014 removal order. Ochoa Decl. ¶ 11. But this time, Fernando-Mateo indicated that he feared returning to Guatemala due

---

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

to threats to his life and freedom and requested that he not be returned there pursuant to 8 U.S.C. § 1231(b)(3)(A).[3] Pet. ¶¶ 16–17.

Although there is no indication in the record of any change in Fernando-Mateo's circumstances (other than his request), that very day, DHS served him with an arrest warrant, took him into custody, and informed him that he would be detained, without a bond hearing, pending a final administrative decision on his section 1231(b)(3)(A) request. Ochoa Decl. ¶ 11.

On December 30, 2019, an asylum officer found that Fernando-Mateo had not established a reasonable fear of returning to Guatemala as required under section 1231(b)(3)(A). *Id.* ¶ 12. Fernando-Mateo appealed that determination to an immigration judge, who disagreed with the asylum officer and vacated the prior finding. *Id.* Fernando-Mateo then was placed in what is commonly referred to as "withholding-only" proceedings. *Id.* ¶¶ 12, 13

After two separate days of hearings in April and May 2020, an immigration judge granted Fernando-Mateo's application for withholding on June 9, 2020. Pet'r's Notice of Filing, Ex., Decision of Immigration Judge, at 1, ECF No. 15-1. DHS has appealed that determination to the Board of Immigration Appeals ("BIA"). *See* Pet'r's Notice of Filing at 2. That appeal is pending, and the non-prevailing party will be

---

[3]     Section 1231(b)(3)(A) states, in relevant part:

> [T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A).

4

able to seek review of the BIA's decision before the Seventh Circuit Court of Appeals. *See* 8 U.S.C. § 1252; *see also Garcia-Arce v. Barr*, 946 F.3d 371, 375–76 (7th Cir. 2019) (reviewing the BIA's order affirming an immigration judge's denial of withholding of removal where alien was subject to a reinstated removal order).

Having been held in custody since November 21, 2019, without a bond hearing, Fernando-Mateo has filed this petition and his motion requesting that the Court order DHS to provide him with an individualized bond hearing during the pendency of his withholding-only proceedings as required by 8 U.S.C. § 1226(a).[4] Fernando-Mateo's petition poses a thorny question of law that has bedeviled numerous circuit courts: whether an alien who is subject to a reinstated removal order under 8 U.S.C. § 1231(a)(5) and is detained during a withholding-only proceeding under 8 U.S.C. § 1231(b)(3)(A) is entitled to a detention hearing under 8 U.S.C. § 1226(a). *See Aleman Gonzalez v. Barr*, 955 F.3d 762, 786 n.18 (9th Cir. 2020) (recognizing the circuit split).

The Second Circuit and Fourth Circuit have answered yes, while the Third, Sixth, and Ninth Circuits have said no. *Compare Guzman Chavez v. Hott*, 940 F.3d 867, 878 (4th Cir. 2019), *cert. granted sub nom. Albence v. Guzman Chavez*, No. 19-897, 2020 WL 3146678 (U.S. June 15, 2020); *and Guerra v. Shanahan*, 831 F.3d 59, 62–64 (2d Cir. 2016), *with Martinez v. Larose*, 968 F.3d 555, 560–64 (6th Cir. 2020); *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 217 (3d Cir. 2018); *and*

---

[4] Although Fernando-Mateo also argues he should be released from custody under the Administrative Procedures Act ("APA"), *see* 5 U.S.C. § 706, the entirety of his argument is three sentences long. *See* Pet. ¶¶ 71–72. The Court finds the argument undeveloped and, therefore, waived. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 507 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

5

*Padilla-Ramirez v. Bible*, 882 F.3d 826, 831−32 (9th Cir. 2017). The Supreme Court is poised to resolve the circuit split in the near future. *See Albence*, 2020 WL 3146678. The Seventh Circuit has yet to address the issue.

For the reasons explained below, the Court agrees with the reasoning of the Second and Fourth Circuits and concludes that Fernando-Mateo is entitled to an individualized bond hearing under section 1226(a). The petition and the motion are therefore granted.

## II.   Legal Standard

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . . [or] in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). "Section 2241 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 678 (2001); *see Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (holding that jurisdiction under § 2241 is proper when petitioner raises due process challenge to legislative framework).

## III.   Analysis

Fernando-Mateo's petition hinges on whether the government's authority to detain him stems from 8 U.S.C. § 1231 or 8 U.S.C. § 1226. If this power comes from section 1231, then Fernando-Mateo is subject to mandatory detention until he establishes that there is not a significant likelihood of removal in the reasonably foreseeable future. *See* 8 U.S.C. § 1231(a)(2); *Zadvydas*, 533 U.S. at 699–701. On the other hand, if the government's ability to detain Fernando-Mateo arises from section

1226(a), then Fernando-Mateo must be afforded the opportunity to prove himself eligible for release on bond. *See* 8 U.S.C. § 1231(a)(2); 8 C.F.R. § 236.1. The Court starts with an overview of the relevant statutory framework.

## A. Reinstatement of Removal Orders and Withholding of Removal

When an alien reenters the United States without authorization after he or she was previously removed or voluntarily left the country under a removal order, "the prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). Furthermore, the reinstated order "is not subject to being reopened or reviewed," *id.*, and the alien is "generally foreclose[d] [from seeking] discretionary relief from the terms of the reinstated order," *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006).

A removal order, whether original or reinstated, designates the country to which the alien is to be removed. *See* 2 *Immigr. Law and Defense* app. A Form I-851A ("Final Administrative Removal Order" ordering that the alien "be removed from the United States to [the destination country] or to any alternate country prescribed by Section 241 of the Act"); 8 C.F.R. § 238.1 (referring to form). But the government may not remove the alien to the designated country (*i.e.*, must "withhold removal") if the alien can show that his or her life or freedom would be threatened in the designated country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3).[5] Once an alien expresses such

---

[5]     Although not applicable here, another exception is that the Attorney General must withhold removal of an alien to a country when the alien establishes that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. *See* 8 C.F.R. § 208.16(c).

fears, such statements trigger a screening process to determine whether the alien may apply for withholding of removal. *See Romero*, 280 F. Supp. 3d at 844.

As part of this process, the alien first must appear before a DHS officer for a reasonable-fear determination. 8 C.F.R. § 208.31(b). If the officer concludes that the alien has a reasonable fear that his or her life or freedom is threatened due to the enumerated characteristics, the alien may apply for withholding of removal. *Id.* § 208.31(e).

On the other hand, if the DHS officer concludes that the alien has not established a reasonable fear of threat, the alien may appeal the decision to an immigration judge. *See id.* § 208.31(f). If the immigration judge agrees with the DHS officer, no further appeal is available, and all that remains is for DHS to execute the reinstated removal order. *Id.* § 208.31(g)(1). However, if the immigration judge disagrees with the DHS officer's determination and vacates it, the alien may apply to the agency for withholding of removal. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.31(g)(2).

From there, the alien proceeds to a withholding-only hearing where the alien has to convince an immigration judge that his or her life or freedom would be threatened because of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(b). At the conclusion of the proceedings, the immigration judge must decide whether to withhold (*i.e.*, prohibit) removal of the alien to the designated country. *See* 8 C.F.R. § 208.31(g)(2)(i). Either side may appeal an adverse decision to the BIA. *Id.* § 208.31(g)(2)(ii). And after the BIA issues its ruling on appeal, the losing party may

seek review of the ruling in the appropriate federal court of appeals. 8 U.S.C. § 1252(b)(4).

At the conclusion of this often lengthy process, if an alien obtains a final order withholding removal to the designated country, the government may not remove the alien to that country. 8 U.S.C. § 1231(b)(3). But this is not the end of the matter. DHS may seek to remove the alien to another country, so long as the destination country meets certain statutory criteria. *See id.* § 1231(b)(2).

In this case, Fernando-Mateo jumped through the various administrative hoops, and an immigration judge granted his request that his removal to Guatemala be withheld. The government has appealed that order to the BIA, and the appeal remains pending.

In the meantime, DHS is trying to find other countries near Guatemala that would be willing to accept Fernando-Mateo. Ochoa Suppl. Decl. ¶ 6, ECF No. 14-1. And, because Fernando-Mateo is an ethnic Mayan and his racial history and ethnicity is that of a person indigenous to Guatemala, it is highly unlikely that he will have national ties to any other country for purposes of removal. *See* Pet'r's Notice of Filing at 2–3.

## B. Statutes and Regulations Governing the Detention of Aliens

Under section 1226(a), DHS is authorized to detain or release an alien on bond or conditional parole "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). If an alien is detained after DHS's initial determination, he or she may request a bond hearing before an immigration judge at any time before an order of removal becomes final. 8 C.F.R. § 236.1(d)(1).

Once an alien is ordered removed, the alien then enters the "removal period," as defined in section 1231(a)(1)(A): "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the '*removal period*.')." 8 U.S.C. § 1231(a)(1)(A) (emphasis provided). The 90-day removal period begins on the latest of:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). And section 1231(a)(2) mandates that, "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2); *see* 8 C.F.R. § 241.3.[6] Most salient to this discussion, section 1231 and its implementing regulations do not provide the alien with the right to a bond hearing.

---

[6] The 90-day removal period can be extended in certain limited circumstances:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C).

## C. Source of DHS's Authority to Detain Aliens Subject to Reinstated Removal Orders During Withholding-only Proceedings

The Court must determine whether the authority for Fernando-Mateo's detention lies in section 1231 (which does not authorize a bond hearing) or section 1226 (which does). As in all cases, "it is best to start with the statutory language itself." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 801 (7th Cir. 2005). After all, "[t]he plain language of the statute is the most instructive and reliable indicator of that Congressional intent." *Papazoglou v. Holder*, 725 F.3d 790, 792–93 (7th Cir. 2013). And "if the statute is unambiguous and has spoken directly to the precise issue such that the intent is clear, we simply give effect to that intent." *Id.* at 792.

According to Respondents, the plain text of section § 1231 authorizes Fernando-Mateo's mandatory detention without bond. First, they cite to section 1231(a)(2), which states in pertinent part that "[d]uring the removal period, the Attorney General shall detain the alien."[7] 8 U.S.C. § 1231(a)(2). Second, Respondents point to section 1231(a)(1)(B)(i), which provides that the "removal period" begins on the "date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). Third, they lean on section 1231(a)(5), which states, "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or

---

[7] Section 1231(a)(2) states in full:

> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2).

having departed voluntarily, under an order of removal, a prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.* § 1231(a)(5). From this, Respondents argue that Fernando-Mateo's reinstated removal order—the order that forms the basis for his current detention—became administratively final on November 12, 2014, and that the removal period began to run on that date, allowing the government to detain him now without a bond hearing.

For his part, Fernando-Mateo contends that the government's authority to detain him emanates from section 1226(a). Because the agency has not issued a final order mandating his actual removal from the United States, he reasons, he is being detained "pending a decision on whether [he] is to be removed" under section 1226(a). *See* 8 U.S.C. § 1226(a). Fernando-Mateo also argues that, because the BIA has not issued its decision in his withholding-only proceeding, the administrative process dealing with his removal from the United States remains pending and is not yet final for the purpose of judicial review.

### 1. Circuit Court Decisions

The Second and Fourth Circuits have concluded that section 1226(a) governs the detention of an alien, who is subject to a reinstated removal order but undergoing withholding-only proceedings. On the other hand, the Ninth, Third, and Sixth Circuits have held that such detentions are subject to section 1231. A review of these cases is instructive.

First came the Second Circuit's decision in *Guerra*, 831 F.3d 59. There, the court relied on section 1226(a)'s language and its relation to section 1231:

> 8 U.S.C. § 1226(a) permits detention of an alien "pending a decision on whether the alien is to be removed from the United States." The statute does not speak to the case of whether the alien is theoretically removable but rather to whether the alien will actually be removed. An alien subject to a reinstated removal order is clearly removable, but the purpose of withholding-only proceedings is to determine precisely whether "the alien is to be removed from the United States."

*Id.* at 62. By contrast, the Second Circuit continued, section 1231(a) is concerned mainly with defining the 90-day removal period during which the Attorney General "shall remove the alien." *Id.* at 62–63 (internal quotation marks omitted). Thus, the former provision is "the more logical source of authorization for the detention of aliens currently in withholding-only proceedings." *Id.* at 63.

The court also reasoned that the definition of the word "final" as it appears in section 1231(a)(1)(B)(i) should mirror the definition of that word as it appears in section 1252(a)(1), a provision in the INA that limits judicial review to "final" agency orders. *Id.* (citing *Kanacevic v. INS*, 448 F.3d 129, 133–35 (2d Cir. 2006), and *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (holding that a removal order would not be final until withholding proceedings concluded after remand)).

Lastly, the court rejected the government's argument that "the finality which permits judicial review is different from the finality which permits [the petitioner's] detention under [section] 1231(a)," noting that "we have never recognized such 'tiers' of finality." *Id.* Indeed, the court observed, "the bifurcated definition of finality urged upon us runs counter to principles of administrative law which counsel that to be final, an agency action must 'mark the consummation of the agency's decisionmaking process.'" *Id.* at 64 (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807,

1813 (2016) (in turn quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997))). In the end, the court concluded that section 1226(a) controlled and held that the petitioner was entitled to a bond hearing before an immigration judge to determine whether continued detention was necessary. *Id.*

The Fourth Circuit agreed with this analysis in *Guzman Chavez*. *See* 940 F.3d at 880−82. Contrasting the different roles of section 1226(a) with 1231(a) within the INA's statutory structure, the court held:

> [R]eading the two provisions together, we conclude . . . that it is § 1226 that governs the petitioners' detention, entitling them to bond hearings. Section 1231's "removal period"—and with it, the requirement of mandatory detention—begins only when the government acquires the "present and final legal authority" to execute a removal order, and so long as withholding-only proceedings are pending, the government lacks that authority.

*Id.* at 873 (internal citation omitted).

The court came to this conclusion for several reasons. It looked first to the language of the two provisions, noting, "[s]ubsection 1226(a) does not reference legal 'removability,' or use other language that captures 'whether the alien is theoretically removable.' Instead, the statute applies 'pending a decision on whether the alien *is to be removed*,' invoking the practical question of whether the government has the authority to execute a removal." *Id.* at 876 (internal citations omitted). As for section 1231, the court continued, its "detention provisions are triggered not when 'an alien is ordered removed' . . . but only when the 'removal period' begins." *Id.* And "that period does not being until the government as the *actual legal authority* to remove a noncitizen from the country." *Id.* (emphasis provided). In this way, "the text and structure of § 1226 and § 1231 align." *Id.* at 877.

14

Additionally, the Fourth Circuit looked at the practical application of section 1231(a)'s 90-day mandate, concluding that "the fact that the removal period is limited to 90 days strongly suggests that it is intended to apply only when all legal barriers to removal are cleared away, leaving just the travel, consular, and various other administrative arrangements that are necessary' to execute a removal order." *Id.* at 877 (cleaned up). And because withholding-only proceedings are typically quite lengthy, "agency officials regularly and predictably will find themselves unable to meet the 90-day removal deadline." *Id.*[8]

As in *Guerra*, the government advanced two primary arguments before the Fourth Circuit, both of which the court rejected. In response to the government's contention that section 1226(a) did not apply because the only question in a withholding-only proceeding is "to where" and not "whether the alien is to be removed," the Fourth Circuit concluded, "We do not think the 'whether' and 'where' questions can be separated so cleanly. . . . Because the government's removal authority turns on the ultimate identification of an appropriate country for removal, it is not clear while withholding-only proceedings are pending that petitioners are in fact to be removed from the United States." *Id.* at 878 (cleaned up). And, like the Second Circuit, the court declined the government's invitation to consider a reinstated removal order as being simultaneously "administratively final," but not "final" for the purposes of judicial review. *Id.* at 880 (rejecting the government's

---

[8] The Fourth Circuit recognized that section 1231(a)(6) allows the government to detain an alien beyond the 90-day period in certain circumstances, but found them applicable. *See* 940 F.3d at 877–78 (stating, "absent a clearer textual command, we are most reluctant to adopt a construction of § 1231 that in an entire class of cases will put government officials routinely and completely foreseeably in dereliction of their statutory duties").

15

"bifurcated definition of finality" because the "presumption is that finality should mean the same thing" in section 1231 and section 1252).

In contrast to the Second and Fourth Circuits, the Ninth Circuit arrived at the opposition conclusion, holding that section 1231(a), not section 1226(a), governed the detention of an alien subject to a reinstated removal order. *See Padilla-Ramirez*, 882 F.3d 826. In its view, "[t]he question . . . is whether [Petitioner's] reinstated removal order is administratively final. If it is, then section 1231(a) controls. If not, then section 1226(a) provides the only authority for detaining him." *Id.* at 830–31.

The *Padilla-Ramirez* court began its analysis by examining section 1231(a)(5):

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*Id.* at 831 (quoting § 1231(a)(5)). In the court's view, the fact that a reinstated removal order "is not subject to being reopened or reviewed" meant that it was "administratively final" as that term appears in section 1231(a)(1)(B)(ii). *Id.* The court also noted that the statute "proscribes any challenge that might affect the status of the underlying removal order." *Id.* Moreover, the court added, by including the reinstatement provision within the detention and supervision provisions of section 1231, rather than within section 1226(a), "Congress meant for the detention of aliens subject to reinstated removal orders to be governed by that section, which would require that such orders be administratively final." *Id.*

The *Padilla-Ramirez* court further explained that withholding-only "proceedings are an exception to the general prohibition against seeking relief from removal pursuant to a reinstated order." *Id.* at 832 (citing 8 C.F.R. § 241.8(e)). This exception "override[s] section 1231(a)(5)'s command that "the alien *shall be removed* under the prior order *at any time after the reentry*," but not the "prohibition on reopening or reviewing a prior removal order." *Id.* The court stressed that, "[a]t most, a grant of withholding will only inhibit the order's execution with respect to a particular country." *Id.*[9] "The removal order itself therefore is not at issue in the withholding-only proceedings, meaning that those proceedings cannot diminish or otherwise affect its finality." *Id.*

Furthermore, the *Padilla-Ramirez* court noted that the presumption that a term has the same meaning in different parts of a statute "give[s] way if the provision at issue points toward a different meaning." *Id.* at 834. And "the text and structure of the Act indicate that Congress intended for section 1231(a) to govern detention of aliens subject to reinstated removal orders." *Id.*

Lastly, the Ninth Circuit drew upon the Supreme Court's decision in *Zadvydas*, 533 U.S. 678. In that case, the petitioner was an alien who was ordered removed and

---

[9]     Put another way:

> The decision to be made in those proceedings is not whether [the petitioner] is to be removed from the United States, but merely whether he may be removed to El Salvador. This narrow question of to where an alien may be removed is distinct from the broader question of whether the alien may be removed; indeed, the former inquiry requires that the latter already have been resolved in the affirmative.

882 F.3d at 832.

detain subject to removal, but no country would accept him. *Id.* at 684–85. And, because he fell into one of the groups set forth in section 1231(a)(6),[10] the government argued that it could detain him for an indefinite period, until it found a country willing to accept him. *Id.* at 689. Concluding that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id.* at 690, the Supreme Court placed an outer limit on continued detention under section 1231(a)(6), holding that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701. Although not completely on point, the Ninth Circuit observed that the Supreme Court had no objection to the fact that Zadvydas was detained pursuant to section 1231(a) while the government was trying to find a suitable destination country. *Padilla-Ramirez*, 882 F.3d at 833. This, concluded the court, "indicates that such country-specific determinations are not 'decision[s] on whether the alien is to be removed from the United States'" as provided in section 1226(a). *Id.*

The Third Circuit agreed with this reasoning in *Guerrero-Sanchez*, 905 F.3d 208. Like the Ninth Circuit, the court framed the issue this way: "which provision [section 1226(a) or section 1231(a)] governs here depends on whether the removal

---

[10]     That provision states:

> An alien ordered removed who is inadmissible under section 1182 of this title, removal under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

order . . . is administratively final: if it is final, then § 1231(a) applies; otherwise § 1226(a) controls." *Id.* at 215. And, like the Ninth Circuit, the Third Circuit found it persuasive that the only remaining decision for the agency to make was not whether the petitioner should be removed, but to where. *Id.* at 216.

Having determined that section 1231(a) controlled, the Third Circuit nevertheless found that an alien detained during withholding-only proceedings generally is entitled to a bond hearing after six months to maintain the constitutionality of section 1231(a)(6). *Id.* at 219–20. In arriving that this conclusion, the Third Circuit took issue with the Ninth Circuit's reliance on *Zadvydas*, noting that the Supreme Court "had no occasion to address the due process concerns posed by prolonged detention of someone in [Petitioner's] situation who is still seeking withholding-only relief." *Id.* at 220. Rather, the Third Circuit found that "*Zadvydas* addressed only the detention of noncitizens who—unlike [Petitioner]—have exhausted all administrative and judicial challenges to removal, including applications for relief from removal, and are only waiting for their removal to be effectuated." *Id.*

The most recent circuit court opinion also came down on the side of section 1231(a). *See Martinez*, 968 F.3d 555. In *Martinez*, the Sixth Circuit determined that section 1231(a) provided the authority to detain an alien who is subject to a reinstated removal order and undergoing withholding-only proceedings. *Id.* at 559. Echoing the Ninth and Third Circuits, the court found section 1226(a) inapplicable because "an alien in withholding-only proceedings . . . cannot challenge whether the government can remove him; he may only challenge whether the government can remove him to

19

a particular country." *Id.* at 561. And, as for whether a reinstated removal order was "administratively final," the Sixth Circuit relied upon its prior cases, concluding that, "with regard to the question of whether the government can remove [Petitioner], there has been an administratively final decision." *Id.* at 565.

## 2. A Reinstated Removal Order Is Not "Administratively Final"

This Court too starts with the text of the relevant statutes and the question of whether Fernando-Mateo's reinstated removal order from 2014 is "administratively final" within the meaning of section 1231(a). As should be obvious by now, the INA does not specify whether a reinstated removal order is "administratively final." That said, the word "final" does appear in other INA provisions, particularly those that provide for judicial review of removal orders. *See* 8 U.S.C. § 1229a(c)(7)(C)(i) ("final administrative order of removal"); *id.* § 1252(a)(1) ("final order of removal "); *id.* § 1252(b)(1) ("final order of removal"); *see also Stone v. INS*, 514 U.S. 386, 405 (1995). What is more, as Respondents concede, notwithstanding section 1231(a)(5), an alien who is subject to a reinstated removal order may appeal the reinstatement itself as well as the agency's denial of a withholding request. 8 U.S.C. §§ 1231(b)(3), 1252.[11]

Thus, as in prior cases, Respondents ask the Court to adopt a bifurcated definition of finality. In other words, according to Respondents, Fernando-Mateo's

---

[11]     An alien subject to a reinstated removal order may seek judicial review as to whether the reinstatement order was properly entered. *See Torres-Tristan v. Holder*, 656 F.3d 653, 656 (7th Cir. 2011); *Lemos v. Holder*, 636 F.3d 365, 366 (7th Cir. 2011); *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002); *see also Yi Xian Chen v. Holder*, 705 F.3d 624, 628 (7th Cir. 2013) (noting that the reinstatement of an order of removal could have been appealed, but was not). Likewise, an alien subject to a reinstated removal order who requests withholding of removal may appeal the denial of withholding. *See Cruz-Martinez v. Sessions*, 885 F.3d 460, 463–64 (7th Cir. 2018).

removal order should be considered "administratively final" for purposes of detention under section 1231(a)(1)(B)(i), but not "final" for purposes of appellate review under section 1252 or section 1229a.

Although the Seventh Circuit has yet to squarely address the precise question at hand, it has provided guidance on how it would interpret the phrase "administratively final" in the context of withholding-only proceedings. *See Garcia-Arce*, 946 F.3d 371. In that case, the petitioner was an alien subject to a reinstated removal order. *Id.* at 375. She sought withholding of removal and, once that was denied, appealed the adverse decision to the BIA. *Id.* After the BIA rejected her appeal in February 2019, she filed a motion asking the BIA to reopen the withholding-only proceedings under section § 1229a(c)(7)(C)(i).[12] *Id.* at 375–76. And once the BIA denied that motion in July 2019, the petitioner appealed both BIA decisions to the Seventh Circuit. *Id.* at 376.

The Seventh Circuit went on to affirm the BIA's decision on both grounds. And, in the process of doing so, the court implicitly characterized the BIA's decision from July 2019 as the "final administrative order of removal" for the purposes of section 1229a(c)(7)(C)(i). *See id.* at 378. Of course, every circuit that has addressed the issue has held that a reinstated removal order is not "final" for purposes of *section 1252(a)* until the withholding-only proceedings have concluded.[13] But, apart from the

---

[12]    Section 1229a(c)(7)(C)(i) states that, except as otherwise provided, any motion to reopen "shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i).

[13]    *See, e.g., Ortiz-Alfaro v. Holder,* 694 F.3d 955, 958 (9th Cir. 2012) ("[W]e hold that where an alien pursues reasonable fear and withholding of removal proceedings following the reinstatement of a prior removal order, the reinstated removal order does not become final

Seventh Circuit in *Garcia-Arce*, the Court has been unable to find any circuit case that addresses when a reinstated removal order subject to withholding-only proceedings becomes a "final administrative order of removal" for the purposes of *section 1229a(c)(7)(C)(i)*. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

This difference matters. Granted, there may be some sliver of daylight between the phrasing "when the order of removal becomes *administratively final*" in section 1231(a)(1)(B)(i) and the phrasing "the date of the *final* order of removal" in section 1252(a) to support the government's argument that they could mean different things (as the Ninth, Third, and Sixth Circuits propose). *Compare* 8 U.S.C. § 1252(a) (emphasis provided), *with id.* § 1231(a)(1)(B)(i) (emphasis provided). But no discernible light exists between the phrase "when the order of removal becomes *administratively final*" in section 1231(a)(1)(B)(i) and the phrase "a *final administrative order* of removal" in section 1229a(c)(7)(C)(i). *Compare id.* § 1231(a)(1)(B)(i) (emphasis provided), *with id.* § 1229(c)(7)(C)(i) (emphasis provided). These practically identical phrases must mean the same thing. *See Perry v. First Nat'l Bank*, 459 F.3d 816, 820–21 (7th Cir. 2006) (stating the law presumes that "Congress intended the same terms used in different parts of the same statute to have the same meaning").

---

until the reasonable fear of persecution and withholding of removal proceedings are complete."); *see also Kouambo v. Barr,* 943 F.3d 205, 213–14 (4th Cir. 2019); *Guerra*, 831 F.3d at 63; *Jimenez-Morales v. U.S. Atty. Gen.*, 821 F.3d 1307, 1308 (11th Cir. 2016), *cert. denied sub nom. Jimenez-Morales v. Lynch*, 137 S. Ct. 685 (2017); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185 (10th Cir. 2015); *Stoddart v. Atty. Gen. U.S.*, 627 F. App'x 94, 96–97 (3d Cir. 2015); *cf. Pichimarov v. Sessions*, 706 F. App'x 877, 879 (7th Cir. 2017) (holding that, under section 1252(a), "[a] final order of removal is not only the actual order of deportation, but all orders closely related to the deportation proceeding, including those entered during the proceeding").

22

Going back to *Garcia-Arce*, the Seventh Circuit found that the petitioner's reinstated order of removal was not "a final administrative order of removal" (albeit under section 1229a(c)(7)(C)(i)) until the BIA denied her request for withholding. *See* 946 F.3d at 378. It follows that the Seventh Circuit would not consider Fernando-Mateo's reinstated 2014 removal order to be "administratively final" under section 1231(a)(1)(B)(i) until *after* the BIA resolves his appeal. Thus, section 1231(a)'s 90-day removal period has yet to begin, and Fernando-Mateo's current detention cannot be governed by section 1231(a), leaving the Court to consider section 1226(a).

### 3. Section 1226(a) Governs Fernando-Mateo's Detention

Section 1226(a), by its terms, applies to aliens who are "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). In finding this provision inapplicable in this context, the Ninth, Third and Sixth Circuits relied heavily on the distinction between the question of "whether" one is to be removed (which, they believe, is governed by section 1226(a)) and "to where" one is to be removed (which, they believe, is governed by section 1231(a)). While this inventive construction has some superficial appeal, it ignores the rather complex, real-world operation of section 1231(b). This case is a good illustration.

Fernando-Mateo is subject to a reinstated removal order, but the immigration judge granted his request for withholding. Consequently, the government cannot remove him to Guatemala, the only country that appears in the 2014 removal order.[14]

---

[14] This is not unique to Fernando-Mateo. In 2018, 1,746 applications for withholding of removal were granted. *See* U.S. Dep't Justice, Executive Office for Immigration Review, FY 2018 Statistics Yearbook, Fig. 24, Withholding of Removal Initial Case Completions by Decision, https://www.justice.gov/eoir/file/1198896/download (last accessed Dec. 2, 2020).

Moreover, it is unclear whether, despite its continuing efforts, the government will be able to find another appropriate destination country given his background as an ethnic Mayan indigenous to Guatemala. *See* Pet'r's Notice of Filing at 1.[15]

This, then, leaves at least three potential outcomes. First, if the BIA reverses the immigration judge's order granting withholding, the BIA's decision will be a final order, subject to appeal to the Seventh Circuit. *See Garcia-Arce*, 946 F.3d at 378. Second, if the BIA affirms the withholding order, DHS must look for another country to which Fernando-Mateo may be legally removed. *See* 8 C.F.R. 1240.12(d). And, if it finds a suitable destination country, DHS must give Fernando-Mateo an opportunity to seek withholding of removal to that new country, and the process repeats. *See Guzman Chavez*, 940 F.3d at 879; *cf. Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998) ("[T]he matter must return to the administrative process so that the Kossovs can receive a full and fair hearing for their claims of asylum and withholding of deportation as to Russia[, an alternate country].").  Third, if BIA affirms the withholding order and the DHS cannot find another country to which Fernando-Mateo may be legally removed despite all reasonable efforts, DHS then will have effectively determined that Fernando-Mateo cannot, in fact, be removed.

But, under any of these scenarios, "ICE lacks the present and final legal authority to actually execute that order of removal." *Romero*, 280 F. Supp. 3d at 846. Indeed, under the third scenario, Fernando-Mateo cannot be removed, even if his reinstated removal order is upheld and his withholding petition denied, if the agency

---

[15]     Indeed, even the government agrees that it will release Fernando-Mateo if the BIA and Seventh Circuit uphold the immigration judge's order, and an alternate country cannot be found.  *See* Ochoa Suppl. Decl. ¶ 7.

determines that no destination country meets the requirements of section 1231(b). Therefore, because "a decision on whether [Fernando-Mateo] is to be removed from the United States" is "pending" at this time, his present detention is governed by section 1226(a). *See* 8 U.S.C. § 1226(a); *Guzman Chavez*, 940 F.3d at 876 (stating that section 1226(a) applies when the government has the actual authority to execute a removal rather than when an alien is merely theoretically removable).

### 4.    Section 1231(a) Is Ill-suited to Withholding-only Proceedings

Contrary to Respondents' contentions, section 1231(a) is a poor match for an alien's detention during withholding-only proceedings.   First, assuming that a reinstated removal order becomes "administratively final" as of its original issuance, the statute mandates the Attorney General to remove the alien from the United States within 90 days.  8 U.S.C. § 1231(a)(1)(A) ("[T]he Attorney General *shall* remove the alien . . . within a period of 90 days . . . ." (emphasis provided)).  But withholding proceedings (and likely subsequent appeals) almost always take more than 90 days, and it is reasonable to assume that Congress was aware of this when enacting section 1231 and its amendments. *Guzman Chavez*, 940 F.3d at 877. As such, that Congress limited the typical removal period to 90 days "makes sense if the removal period is only meant to govern the final logistical steps of physically removing an alien." *Romero*, 280 F. Supp.3d at 846.  Otherwise, the agency regularly would be in violation of section 1231(a)(1)(A), something that Congress could not have intended.

In response, Respondents point out that section 1231(a)(1)(C) allows for an extension of the 90-day period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or

25

conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). According to Respondents, when an alien requests withholding, he or she "acts to prevent the alien's removal." *See id.* But this is not obvious from the text of the statute, and the argument has been rejected before. *See Guzman* Chavez, 940 F.3d at 877–78. What is more, DHS has taken a contrary position on a prior occasion, stating that "[a]n alien who challenges a final order of removal through court processes, including appeals, stays of removal, and motions to reopen denial decisions, is not considered failing to comply with the removal order." *See* DHS's Office of the Inspector General, ICE's Compliance with Detention Limits for Aliens with a Final Order of Removal from the United States, OIG–07–28 (Feb. 2007) at 19, http://oig.dhs.gov/assets/Mgmt/OIG_07-28_Feb07.pdf.[16] Accordingly, the Court gives this argument little weight.

As noted above, the Ninth, Third and Sixth Circuits relied heavily on the distinction between "whether" an alien is to be removed versus "to where" he or she is to be removed. But this deconstruction of removal orders also can support the opposite construction. Recall that section 1231(a)(5) precludes an alien from challenging the initial removal order upon its reinstatement. But, in section 1231(b)(3)(A), Congress allowed the same individual to challenge the designated country of destination. From this, one interpretation (espoused by Respondents) is that the "order of removal" in section 1231(a)(1)(B)(i) and "removal order" in section

---

[16]    The Court may take judicial notice of this report. *See Meriyu v. Barr*, 950 F.3d 503, 508 (7th Cir. 2020) (permitting *sua sponte* judicial notice of a government agency's report).

1231(a)(1)(B)(ii) refer only to the first element addressed in section 1231, the "whether."

But equally plausible is the view that the two phrases are intended to encompass both elements of an order of removal that are addressed in sections 1231(a)(1)(5) and 1231(b)(3)(A)—the "whether" *and* the "to where." In fact, as the Fourth Circuit put it, the language and structure of section 1231 confirm that "both legally and practically, the two [questions] are intertwined: Because the government's removal authority turns on the ultimate identification of an appropriate country for removal, it is not clear while withholding-only proceedings are pending that petitioners are in fact 'to be removed' from the United States." *Guzman* Chavez, 940 F.3d at 878 (cleaned up). Accordingly, the deconstruction thought exercise offered by Respondents provides little guidance on this issue.

Finally, the conclusion that section 1226(a), not section 1231(a), governs the detention of aliens, like Fernando-Mateo, who are subject to reinstated removal orders but undergoing withholding-only proceedings, finds support in the overall structure of the INA. With this construction, the statute sets forth a sensible sequence leading up to an alien's actual removal. First, section 1226(a) provides for the apprehension and detention of aliens, as well as their detention "pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a). Next, section 1229 mandates the initiation of removal proceedings, while section 1229a governs the removal proceedings themselves. And, finally, section 1231(a) governs the detention and removal of aliens once all legal requirements have been satisfied and appeals completed, so all that remains is to

effectuate the removal. Because Fernando-Mateo has not reached that final stage, his detention is not governed by section 1231(a).

## IV.    Conclusion

For the reasons provided above, the Court holds that section 1226(a) is the source of authority for Fernando-Mateo's detention.[17] Accordingly, he is entitled to make his case for release on bond at an individualized hearing, and his habeas corpus petition and emergency motion are granted. Respondents are ordered to provide Fernando-Mateo with an individualized hearing pursuant to section 1226(a) within three days of the issuance of this Order.


**IT IS SO ORDERED**                     **ENTERED: 12/2/20**

                                                       _____
                                                       **JOHN Z. LEE**
                                                       **United States District Judge**

---

[17]    Having concluded that 8 U.S.C. § 1226 governs, the Court need not address Fernando-Mateo's alternative argument that, should 8 U.S.C. § 1231 apply, his due process rights have been violated under *Zadvydas*. *See* Pet'r's Reply ¶¶ 27–32, ECF No. 12. The Court pauses only to note that, as to this claim, the initial burden is on the alien to show that there is no significant likelihood of removal in the foreseeable future, *see Zadvydas*, 533 U.S. at 701, and the present record is less than complete on this issue.

28